THE STATE OF MISSOURI *ex rel.* NORTH MISSOURI CENTRAL RAILROAD COMPANY, Relator, *v.* THE LINN COUNTY COURT, Respondent.

1. *Contracts — Township — Power of, to make — Legislature* — Townships have no power by themselves to make independent contracts or to become bound in their separate capacity, and the law has not invested them with that power. But there is nothing to prevent the Legislature from doing so should it see fit.

2. *Railroads — Railroad act of 1868 — County bonds — Constitution.* — Bonds issued by a township under the act to facilitate the construction of railroads in Missouri (Sess. Acts 1868, p. 92), are not in any sense county bonds; and the County Courts and counties named are merely made use of as agencies to carry out the object contemplated by the act. Hence, that act is not antagonistic to section 14, art. XI, of the State constitution.

3. *Revenue — Taxes and subscriptions by municipal corporations — Legislature — Powers of.* — The law is now well settled in the United States, that the Legislature, having the control of the municipal organizations, and the power to enlarge or abridge their powers at pleasure, may make them the instruments in carrying out works of public improvement, and may authorize them to make the subscription and levy taxes and issue bonds to meet the assessments thereon. The new constitution has not abridged this power. It only requires a different mode of procedure, and the assent of two-thirds of the qualified voters before a subscription shall be authorized.

4. *Revenue — Taxation, under act for constructing railroads in Missouri — Assessment for benefits — Constitution.* — The provision in the act to facilitate

the construction of railroads in Missouri (Sess. Acts 1868, p. 92, § 2), requiring that the taxes for the payment of bonds issued for that purpose shall be based exclusively on real estate, is more in the nature of an assessment for benefits than general taxation. The lands are adjudged to be benefited by the improvements and are taxed in proportion to the amount of such benefit, and the whole tax and expense is levied upon them. And the principle applies in its fullest extent to railroads. Section 16, art. XI, of the constitution, against exempting property from taxation, has reference only to ordinary and general taxation for the purposes of revenue; and assessments of taxes under section 2 of the above act are not such taxations as is contemplated by the general terms of the constitution.

### Petition for mandamus.

*Burgess*, and *Mullens*, for relator.

I. Bonds issued under the act of March 23, 1868, (Sess. Acts 1868, p. 92,) are not the bonds of the county, but are the bonds of the township; and, although the act requires them to be issued in the name of the county, the township alone is responsible for their payment. (Briscoe v. Bank of the Com. of Ky., 11 Pet. 257; Hodges v. Runyan, 30 Mo. 491; Tutt v. Hobbs, 17 Mo. 488; Angell & Ames on Corp. §§ 276, 278.) There is nothing in the constitution of the State of Missouri which prohibits the General Assembly from authorizing townships to subscribe stock to railroad companies in the manner prescribed by the act of March 23, 1868; and, in the absence of such prohibition, the Legislature has that power. (Cincinnati, Wilmington & Zanesville R.R. Co. v. The Commissioners of Clinton County, 1 Ohio St. 77; The Steubenville & Indiana R.R. Co. v. The Trustees of North Township, Harrison Co., 1 Ohio St. 105.) The county of Linn is a municipal corporation. (2 Kent's Com. 275; Ang. & Ames on Corp. §§ 9, 29; 2 Bouv. Law Dict. 201; Coles v. Madison County, 1 Breese, 154.) And the act of the General Assembly makes the townships corporations with such powers only as are necessary to enable them to carry into effect the objects contemplated by the act; and the duty enjoined upon the county courts is that of special agents in behalf of the townships. (Ang. & Ames on Corp. §§ 23, 24, 276, 278, and authorities hereinbefore referred to.)

II. The act of the General Assembly in question is not

invalid for the reason that taxation, to pay the subscriptions authorized by the act, or the bonds issued in payment thereof, is limited to the real estate. The Legislature was the sole judge of the propriety of this action. (Glasgow v. Rowse, 43 Mo. 479 ; The People v. The Mayor of Brooklyn, 4 Comst. 419, 430, 431, 438, and cases there cited; Sedgwick on Stat. and Const. Law, 502–3, 554, 557; Cooley's Const. Lim. 506, and cases cited.)

III. Unless there is an express constitutional prohibition, municipal corporations, when acting by legislative authority, are authorized to subscribe to the stock of railroad companies, issue bonds, and levy taxes to pay the same. (Pierce on Am. R.R. Law, 114–15; Sedg. on Stat. and Const. Law, 463–4.)

*Easley*, for respondent.

I. The act of March 23, 1868 (Sess. Acts 1868, p. 92), is unconstitutional, because the bonds which it is sought to compel respondent to issue, under the provisions of said act, would be an indebtedness to the county of Linn, and not to the township of Benton, for these reasons: 1. The township has no authority to make the bonds. 2. The township is not a corporation, nor even a *quasi* corporation, nor does the said act make the township like a corporation for any purpose whatever, even by implication. 3. The act expressly provides that the bonds shall be issued "in the name of the county." 4. The County Court is the agent of the county, and not the agent of the township. (Const. of Mo., art. XI, § 14.)

II. The said act of March 23, 1868, is unconstitutional, because it is therein provided that real estate only shall be taxed for the payment of the bonds issued under it, thus exempting all other species of property. (Const. of Mo., art. XI, § 16.) It can not be urged that the assessments required to be made under this act are not "taxation," within the meaning of the constitutional prohibition. The only authority of the Legislature to require public improvements, like railroads, to be made at the public expense, is based on their general taxation powers. (Sharpless v. Mayor, etc., of Philadelphia, 21 Pa., 147, and the authorities cited.)

WAGNER, Judge, delivered the opinion of the court.

The relator asks this court to grant a peremptory writ of *mandamus* against the respondent; and states, substantially, that on the 18th day of May, 1869, at a term of the County Court, in and for the county of Linn, in the State of Missouri, a petition signed by twenty-five (and more) persons, tax payers and residents in the municipal township of Benton, in said county, setting forth their desire, as a township, to subscribe twenty thousand dollars to the capital stock of the North Missouri Central Railroad Company, which road was proposed to be constructed through the said township. The petition stated the terms and conditions on which the petitioners desired the subscription should be made. It is further alleged that on the said 18th day of May, 1869, the County Court made, and caused to be entered on the record of its proceedings, an order for an election as prayed for in the petition, which order is set out at length; that in pursuance of said order, an election was duly held, conducted as prescribed by law, and that more than two-thirds of the qualified voters of the township voting at the election, voted in favor of the subscription; that at an adjourned term of the court, held on the 5th day of July, 1869, the court made an order of record, making the subscription in behalf of the said Benton township according to the terms and conditions as set forth in the petition for the election and the order of the court calling the same; that afterwards, at the August adjourned term of said court, held on the 6th day of September, 1869, the North Missouri Central Railroad Company requested the court to issue and deliver to said company the bonds required under the terms and conditions of said subscription; but the court refused, and still refuses, to deliver the bonds, for the alleged reason, only, that the act under which the subscription was made was unconstitutional and void.

The return admits all the facts stated in the petition; that all the proceedings were regularly had, and that the court made the subscription, but denies that the relator is entitled to the bonds; avers that the court ought not to issue and deliver them, because

the law under which they acted is violative of the State constitution, and should therefore be regarded as a nullity. The authority for counties to subscribe in behalf of townships and under which the proceedings in this case were had, is derived from an act of the Legislature, approved March 3, 1868. (Sess. Acts 1868, p. 92.) The act is entitled "An act to facilitate the construction of railroads in the State of Missouri." The first section provides that whenever twenty-five persons, tax-payers and residents, in any municipal township, for election purposes, in any county in this State, shall petition the County Court of such county, setting forth their desire, as a township, to subscribe to the capital stock of any railroad company in this State, building or proposing to build a railroad into, through, or near such county, and stating the amount of such subscription, and the terms and conditions on which they desire such subscription shall be made, it shall be the duty of the County Court, as soon as may be thereafter, to order an election, to be held in such township, to determine if such subscription shall be made, which election shall be conducted and returns made in accordance with the law controlling general and special elections; and if it shall appear, from the returns of such elections, that not less than two-thirds of the qualified voters of such township voting at such election are in favor of such subscription, it shall be the duty of the County Court to make such subscription in behalf of such township, according to the terms and conditions thereof; and if such conditions provide for the issue of bonds in payment of such subscription, the County Court shall issue such bonds in the name of the county, with coupons for interest attached; but the rate of interest shall not exceed ten per cent. per annum; and the same shall be delivered to the railroad company. By section 2 it is provided that in order to meet the payments on account of the subscription to the stock, according to its terms, or to pay the interest or principal on any bond which may be issued on account of such subscription, the County Court shall, from time to time, levy and cause to be collected, in the same manner as county tax, a special tax, which shall be levied on the real estate lying within the township

making the subscription, in accordance with the valuation then last made by the county assessor for county purposes.

The third section authorizes and requires the county treasurer to receive and collect of the sheriff of the county the income from the tax provided in the previous section, and to apply the same in payment of the stock subscription, according to its terms, or to the payment of interest and principal on the bonds, should any be issued in payment of such subscriptions. It requires him also to pay all interest on such bonds, out of any money in the treasury collected for that purpose, by the tax so levied, as the same becomes due, and also the bonds as they mature, which shall be canceled by the County Court. The fourth section makes provision that persons paying taxes to pay the stock subscriptions made in accordance with the act, shall receive from the collector a certificate setting forth in a definite manner the facts, and such certificates, in sums of one hundred dollars, shall be convertible into the stock of the railroad company receiving the subscription, and the County Court is required to hold the stock subscribed in behalf of any township in trust for such taxpayers, to be transferred as they become entitled to it. It is now contended that the act is unconstitutional, because the bonds which it is sought to compel respondent to issue under the provisions of the act would be an indebtedness of the county, and not of the township, and that it is therefore in direct antagonism with section 14, article XI, of the State constitution, which declares: "The General Assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto." It is further insisted that the act is unconstitutional, for the reason that, in providing for the payment of the principal and interest on such bonds as may be issued, it requires that real estate only shall be taxed, thereby exempting all other species of property, for which reason it is in violation of the sixteenth section of the eleventh article of the constitution, which says: "No property, real or personal, shall be exempt from such taxation, except such as may be

used exclusively for public schools, and such as may belong to the United States, to this State, to counties, or to municipal corporations within this State." As to the first ground, that the township is not a corporation, nor even a *quasi* corporation, and has no authority to make the bonds, and that, consequently, they would be the bonds of Linn county, I do not think the objection is insuperable. The township is a legal subdivision of the county — is an organization for certain municipal purposes — but it has no power by itself to make independent contracts, or to become bound in its separate capacity. The law has not invested it with that power. It forms an integral part of the county, and the county, to a certain extent, controls and acts for it. In some of the States, townships act independently, through trustees, and are capable of making valid and binding contracts; but our law has not given them that authority. I know of nothing, however, to prevent it, should the Legislature see fit to do so. But the plain provisions of the act which governs this case entirely negative the assumption that the bonds would, in any event or contingency, be the bonds of the county. It is true the County Court is made the medium through which the bonds are to be issued, and they are to be issued in the name of the county. This is done, I suppose, because the townships have no distinct and independent political organization. But still the law requires that the subscription shall be made by the court, in behalf of the township; and it provides for the payment of interest and principal by the township exclusively. The mode of subjecting the property in the townships made liable for the payment of the tax is clearly pointed out. The collector is empowered to collect the special tax and pay it over to the treasurer, whose duty it is to keep it separately, and to apply it to the payment of the stock subscription, according to its terms, or to the payment of the interest and principal, as the case may be, but in no event does it become a charge on the county. The bonds are not, therefore, in any sense county bonds. The subscriptions are essentially township subscriptions, and the bonds are, to all intents and purposes, township bonds, and the County Courts and the counties named are merely made use of as agencies to effectuate and carry out the

object. The law is now well settled in the United States that the Legislature, having control of the subordinate municipal organizations, and the power to enlarge or abridge their powers at pleasure, may make them the instruments in carrying out works of public improvement, and may authorize them to make the subscription and to levy taxes and issue the bonds to meet the assessments thereon. Such is now the universal current of decisions, and the question has not been opened to dispute in this State since the case of the City and County of St. Louis v. Alexander, 23 Mo. 483. The new constitution has not abridged this power. It only requires a different mode of procedure, and that two-thirds of the qualified voters shall assent thereto before any subscription shall be authorized to be made. The next point to be considered is whether the law is liable to the objection that it violates the constitution, which declares that "no property, real or personal, shall be exempt from taxation," etc. The provision in the law requiring that the taxes should be based exclusively on real property, is more in the nature of assessments for benefits than general taxation. It is a common mode and the general practice, when authorizing local improvements to be made, to cause the expense to be assessed upon the owners of real estate in the immediate vicinity of the improvements, on the ground that such real estate will be immediately and principally benefited thereby. The lands are adjudged to be benefited by the improvements, and are taxed in proportion to the amount of such benefit, and the whole tax and expense is levied upon them. The construction of a railroad through a township is calculated to permanently increase and enhance the value of all the lands in that township, and hence the principle applies in the fullest extent. It is the land which derives the permanent advantage, while personal property may not be affected. Although the law in this instance does not contemplate that the taxes assessed shall be a gratuity, and that the persons paying shall receive no other consideration than the supposed benefits to their property — for provision is made by which they ultimately become shareholders in the company to the amount of payments — still the payment is an enforced burden, an exercise of the taxing power.

It is obvious that the section in the constitution against exempting property from taxation had reference only to ordinary or general taxation for the purposes of revenue, and that assessments of the character involved in this case is not such taxation as is contemplated by the general terms which the constitution employs. The County Court having made the subscription, the company is entitled to the bonds. (State *ex rel.*, etc., v. Macon County Court, 41 Mo. 465.)

Peremptory *mandamus* ordered; the other judges concurring.