## Case No. 4,912.

### FOOTE v. JOHNSON COUNTY.

[5 Dill. 281;[1] 24 Int. Rev. Rec. 165; 6 Cent. Law J. 345.]

Circuit Court, W. D. Missouri. April 20, 1878.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

John B. Henderson, for plaintiff.
Thomas C. Reynolds, for defendant.

Before DILLON, Circuit Judge, and KRE-KEL, District Judge.

DILLON, Circuit Judge. This is an action against the county on what are known as "township bonds," issued under the "Township Aid Act" of March 23, 1868. A demurrer to the petition presents the question whether that act is in conflict with section 14, art. 11, of the state constitution of 1865.

The ground of alleged conflict is that the act authorizes the issue of bonds in aid of a railroad when the proposition is sanctioned by "two-thirds of the qualified voters of the township voting at the election," whereas the constitution requires such a proposition to be assented to by "two-thirds of the qualified voters of the township."

In Harshman v. Bates Co., 92 U. S. 569, Same Case below [Case No. 6,148], the supreme court of the United States held that the act was in conflict with the constitution, on the ground above-mentioned. But, subsequently, after a thorough argument and most deliberate consideration, the supreme court of the United States, in Cass Co. v. Johnson [95 U. S. 373], overruled its judgment in Harshman v. Bates Co., on the point in question, and, upon a full examination of all the decisions of the supreme court of Missouri touching the township aid act, declared, in respect of bonds already issued, that those decisions settled the question of the constitutionality of that act in favor of its validity. Particular stress was laid upon the Linn Co. Case (A. D. 1869) 44 Mo. 504, in which the supreme court of Missouri, by mandamus, compelled a reluctant and opposing county court to issue bonds upon a subscription made pursuant to a vote under the very statute here in question. Mr. Chief Justice Waite, after referring to the Missouri decisions, says: "It is true that the objection now made to the law was in no case presented or considered (by the supreme court of Missouri), but this is sufficiently explained by the fact that in other cases a construction had been given to language similar to that employed in the constitutional prohibition adverse to such a position;" and the chief justice refers to State v. Winkelmeier (1864) 35 Mo. 103; State v. City of St. Joseph (1866) 37 Mo. 270; State v. Binder (1866) 38 Mo. 450; and State v. Sutterfield, 54 Mo. 391.

This line of decisions in Missouri, in our judgment, fully justifies the chief justice in stating that they sufficiently explain why the specific objection now urged to the act of 1868 was not presented in any court until it was presented to the supreme court of the United States in the Harshman Case, at the October term, 1875. The report shows that it was not made in the circuit court. Harshman v. Bates Co. [Case No. 6,148].

Suits in great numbers on these township bonds have been brought in the circuit court of the United States for this district, and they have been defended by the ablest lawyers in the state, upon every ground that they conceived open to them. Jordan v. Cass Co. [Id. 7,517]. But this difference between the phraseology of the constitution and the act, so patent that it could not escape attention, was never presented or urged in any case, so far as either of us recollect, as invalidating the act. The only explanation for this silence on the point in the state and federal courts is to be found in the Missouri decisions referred to by the chief justice.

But it is urged that whatever doubt there might heretofore have been touching the validity of the township bond act, the question of its unconstitutionality is now settled adversely to the act by the case of State v. Brassfield [81 Mo. 151], decided by the supreme court of Missouri on the 16th day of the present month (April, 1878).

We have been furnished with the opinions of the judges in the case referred to, and have read them with attention. Only three judges took part in the decision. Two of them (Henry and Sherwood, JJ.) hold the act unconstitutional, and one (Hough, J.) was of the opinion that the objectionable words, "voting at such election," could be eliminated from the act, and thus relieve it of the constitutional objection. Napton, J., though not sitting in the case, filed a brief opinion, stating his concurrence in the opinion of Chief Justice Waite in the case of Cass Co. v. Johnson [supra]. Norton, J., having been of counsel, did not sit.

There is, therefore, no judgment of the majority of the judges of that learned court that the act of 1868 is unconstitutional. It is the duty of this court, then, to follow the judgment of the supreme court of the United States. But even if the supreme court of Missouri had, in its recent judgment, for the first time pronounced the act of 1868 unconstitutional, it is our judgment that in

this class of cases the supreme court of the United States, as to bonds antecedently issued, would not, under the circumstances, feel itself bound to change its decision to conform to the decision of the supreme court of the state.

The supreme court of the United States considers questions arising upon negotiable municipal bonds issued under state authority to relate to commercial securities, and not to present questions of mere local law; and where such securities have been issued before any decision of the state tribunals denying the validity of the act authorizing the issue, the supreme court has declared that in protecting the constitutional rights of creditors it will decide for itself whether, under the constitution and laws of the state, such securities are valid or void. Pine Grove v. Talcott, 19 Wall. [86 U. S.] 666; Olcott v. Supervisors, 16 Wall. [83 U. S.] 678. The cases last cited related to bonds which had been issued under acts which had been declared unconstitutional by the supreme court of Michigan in the one case, and by the supreme court of Wisconsin in the other, after the bonds in question had been issued. The duty of the supreme court of the United States to follow the judgment of the supreme court of the state was strongly urged by counsel. But the supreme court was of a different opinion, and in the case first cited Mr. Justice Swayne expresses the views of the court on the subject in language so emphatic and decisive as not to be mistaken. He says: "The question before us belongs to the domain of general jurisprudence. In this class of cases this court is not bound by the judgment of the courts of the states where the cases arise. It must hear and determine for itself. Here commercial securities are involved. When the bonds were issued there had been no authoritative intimation from any quarter that such statutes were invalid. The legislature affirmed their validity in every act by an implication equivalent in effect to an express declaration; and during the period covered by their enactment neither of the other departments of the government of the state lifted its voice against them. The acquiescence was universal. The general understanding of the legal profession throughout the country is believed to have been that they were valid. The national constitution forbids the states to pass laws impairing the obligation of contracts. In cases properly brought before us, that end can be accomplished unwarrantably no more by judicial decisions than by legislation. Were we to yield in cases like this to the authority of the decisions of the courts of the respective states, we should abdicate the performance of one of the most important duties with which this tribunal is charged, and disappoint the wise and salutary policy of the framers of the constitution in providing for the creation of an independent federal judiciary. The exercise of our appellate jurisdiction would be but a solemn mockery." See, also, Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175, 205, 206; Butz v. Muscatine, 8 Wall. [75 U. S.] 575.

This court must, therefore, hold the act of March 23, 1868, to be constitutional, in conformity to the opinion of the supreme court of the United States. The demurrer to the petition is accordingly overruled.

Judgment accordingly.