WESTCOTT (HANFORD v.). See Case No. 6,022.

WESTCOTT (HOPKINS v.). See Case No. 6,692.

WESTCOTT (LAMSON v.). See Case No. 8,035.

## Case No. 17,432.

### WESTERMANN v. CAPE GIRARDEAU COUNTY.

[5 Dill. 112: 7 Reporter, 101; [1] 24 Int. Rev. Rec. 357; 7 Cent. Law J. 353.]

Circuit Court, E. D. Missouri. Sept., 1878.

#### RAILWAY AID BONDS—CONFLICTING DECISIONS OF STATE AND FEDERAL COURTS—BONA FIDE PURCHASERS.

1. The supreme court of the United States having held the township railroad act of Missouri constitutional (Cass Co. v. Johnston, 95 U. S. 360), it is the duty of the circuit court to follow that judgment, notwithstanding the later decision of the supreme court of Missouri to the contrary.

[Cited in Douglass v. Pike Co., 101 U. S. 679.]

2. Where negotiable commercial securities are issued and negotiated before there are any decisions by the courts of the state against the validity of the act authorizing their issue, the supreme court of the United States does not consider itself bound to follow a subsequent

---

[1] [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission. 7 Reporter. 101, contains only a partial report.]

decision of the local courts invalidating such securities, but will decide for itself whether, under the constitution and laws of the state, such securities are valid or void.

3. The bond sued on being in the hands of a bona fide holder, containing a recital that it was issued to pay for a subscription to the Cape Girardeau and State Line Railroad, the county cannot be heard to say that the subscription therein specifically recited was not made.

4. The fact that the requirement of a two-thirds vote is contained in a provision of the constitution instead of a legislative enactment, makes no difference in principle.

Finkelnburg & Rassieur and Kehr & Tittman, for plaintiff.

Louis B. Houck, for defendant.

DILLON, Circuit Judge (orally). This is an action by the plaintiff on what are known in this state as township railroad aid bonds. The question now to be decided arises on a demurrer to several pleas or special defences. First, the petition does not set forth, as it is advisable to do, a copy of one of the bonds to which the coupons in suit were attached. The nature of the obligation, however, is stated in the petition: That in the year 1869, the defendant, the county of Cape Girardeau, issued a bond on behalf of Cape Girardeau township, negotiable in form, to the Cape Girardeau and State Line Railroad Company or bearer, and containing this recital: "This bond is issued pursuant to an order of the county court of said county, made by authority granted by an act of the general assembly of the state of Missouri, entitled 'An act to facilitate the construction of railroads in the state of Missouri,' approved March 23d, 1868, in payment of the subscription made to the capital stock of the said Cape Girardeau and State Line Railroad Company by the municipal township of Cape Girardeau, and authorized by a vote of more than two-thirds of the voters of said township, at an election held for that purpose in said township on the 13th day of April, 1869." That is the first act in this state, and I believe the only act, that authorized townships to aid railroads by subscriptions and the issuing of bonds.

Now, about six years ago the question of the validity of this subscription came before the supreme court of the state of Missouri, in the case of Ranney v. Baeder, 50 Mo. 600. The objection urged in that case against the validity of that subscription was, that the particular railroad to which the subscription was made was not specified with sufficient certainty in the petition of the tax-payers asking for the submission, and in the order of the county court making the subscription. In that case the petition, and all orders of the county court in reference to the subscription, were before the supreme court of the state, and the result was that it was adjudged a valid one. Judge Wagner, after referring to a case in the supreme court of Missouri, and one in the supreme court of the United States, says: "The two cases just referred to show that there must be reasonable certainty in the matter of voting and ordering the subscription, and that the subscription must be made to the road authorized in the power delegated to the agent. Tested by these principles, we think the subscription in this case was entirely valid. As no other fault is found with the proceedings, and as every step taken seems to have been done in a formal and regular manner. I entertain no doubt about the subscription. The objections urged are entirely too refined and technical." And the judgment of the court below, holding this an invalid subscription, was reversed. That was in 1872. That is the precise objection that is reproduced in the fifth plea in this case; and we are asked to say that these bonds are invalid because the particular railroad was not specified with sufficient certainty in the proceedings. There are two objections to holding this to be good: The first is that the supreme court of Missouri, in 1872, decided that these proceedings, in a case where the whole record was before it, were regular. But it is now urged that Judge Wagner was mistaken in reference to the charter and amended charter recited therein. I think it very doubtful whether he was; certainly a bondholder cannot be supposed to know more in relation to this matter than the supreme court of Missouri. However that may be, this bond recites on its face that it was issued to pay for a subscription made to the Cape Girardeau and State Line Railroad. The county court cannot be heard, when the bond is in the hands of a bona fide holder, to say that the subscription therein specifically recited was not made. That disposes of this plea.

Another defence is that the act of March 23, 1868, under which these bonds were issued, was unconstitutional, and that that has been held to be so by the supreme court of the state of Missouri in several recent cases, in two respects—one because the constitution requires the assent to this subscription to be given by two-thirds of the qualified voters of the township, whereas the act of 1868 authorizes that assent to be given and the subscription to be made if two-thirds of the qualified voters voting at the election shall assent. That presents a question upon which there has been a great conflict of judgment between the supreme court of the state and the supreme court of the United States. In the Linn County Case (1869) 44 Mo. 504, the question of the issue of bonds under this act came before the supreme court, and they actually compelled, by mandamus, a reluctant county court to issue bonds under this very act, and of course it was implied in that judgment that the act under which these bonds were issued was constitutional. The particular point, perhaps, now urged against the validity of this act was not before the court.

A hundred cases—and I do not think I exaggerate—have been brought on these township bonds in the federal courts of this state, and prior to the decision of Harshman v. Bates Co. [Case No. 6,148] 92 U. S. 569, none

of the able lawyers defending these cases ever made a point that the act of March 23, 1868, was unconstitutional. But when the case to which I have just adverted went to the supreme court of the United States, counsel did make that question, and that court, in its first decision, held that the point was well taken, and that the act of March 23, 1868, was unconstitutional.

The same question was brought before the supreme court in another case (Cass Co. v. Johnston, 95 U. S. 360), and more deliberate consideration was given to it; and it reversed its first judgment, and held that this act was not open to the constitutional objection urged. That is the last judgment of the supreme court of the United States on this question. Since that decision the supreme court of Missouri held that the act is in conflict with the constitution on that ground, and also that the 5th section, which in effect requires that the proceeds of state and county taxes on railroad property be applied to the liquidation of these bonds, invalidates it. And it is an undisputed fact that the law of the state of Missouri has been declared by its supreme court to be that these bonds cannot be enforced, and that if this action was in a state court instead of here, it is agreed that the defendant would have judgment.

Now, the question is, what is the duty of this court, with a judgment of the supreme court of the United States in full force and unreversed, declaring these bonds constitutional, and a subsequent judgment of the supreme court of the state holding that this act is in violation of the constitution of the state? That is not a new question in the history of bond litigation in this country. I had occasion to consider it in a case before me at the last term of the United States circuit court for the Western district of this state, and what I said there, on that occasion, expresses my views on this. Foote v. Johnson Co. [Case No. 4,912]. (The court here quoted at large from the opinion in the case just cited.) And this is our own judgment now.·

There is another plea here, to the effect that, in point of fact, two-thirds of the qualified voters of the township did not vote for this subscription, but it alleges no notice of that fact to the bondholders; and the recital in the bond is that this subscription is authorized by a vote of more than two-thirds of the voters, and that the vote was duly taken. It is urged, however, that, inasmuch as there are provisions of law in force requiring the registration of voters, and this requirement was embodied in a constitutional provision, that makes a distinction between this case and the case decided by the supreme court, where the requirement of a precedent vote was by a mere statute. It makes no difference in principle that the requirement of a two-thirds vote is contained in a provision of the constitution rather than a legislative enactment.

The demurrer to the pleas will be sustained. Judgment accordingly.