PEORIA BRIDGE ASS'N (COLUMBUS INS. CO. v.). See Case No. 3,046.

PEORIA, P. & J. R. CO. (LABAREE v.). See Case No. 7,959.

PEPITA, The (STETSON v.). See Case No. 13,382.

———

## Case No. 10,972.

### PEPPER v. SALINE COUNTY.

[5 Dill. 270, note.] [1]

Circuit Court, W. D. Missouri. April Term, 1879.

CONSTITUTIONAL LAW — TOWNSHIP RAILWAY AID BONDS—NEGOTIABILITY—BONA FIDE HOLDERS.

[1. The Missouri statute of March 24, 1868 (Laws 1868, p. 97), amending the charter of the Louisiana & Missouri River Railroad Company so as to permit an extension of its road across, and on the south side of, the Missouri river, was within the legislative powers of the state. Foster v. Calloway Co., Case No. 4,967, followed.]

[2. The Missouri statute of March 23, 1868 (Laws 1868, p. 92), authorizing townships to subscribe to the capital stock of a railroad company when two-thirds of the persons voting upon the question vote in favor thereof, is valid and constitutional. County of Cass v. Johnston, 95 U. S. 360, followed.]

[1] [Reported by Hon. John F. Dillon, Circuit Court, and here reprinted by permission.]

[3. After a county had voted a subscription to the capital stock of a railroad company, the issuance of bonds therefor was enjoined. Pending the injunction one of the townships composing the county voted a subscription to the railroad, and issued bonds therefor, which contained upon their face a provision that they were to be converted and exchanged for bonds of the county whenever the injunction should be finally dissolved. *Held*, that this provision rendered the bonds nonnegotiable, and hence they were subject, even in the hands of innocent holders, to the defense of invalidity for noncompliance with the conditions upon which they were issued.]

At the April term, 1879, the question of the validity of the bonds of the defendant county arose on a demurrer to the answer in the case of Pepper v. Saline Co.

Thomas K. Skinker, for plaintiff.

Graves & Rathburn and Thomas C. Fletcher, for defendant.

KREKEL, District Judge. This suit is brought on coupons detached from bonds issued in payment of a subscription by Marshall township, in Saline county, to the capital stock of the Louisiana & Missouri River Railroad. A vote was had under the so-called township act of March 23d, 1868, and the requisite two-thirds vote of those voting was given in favor of the subscription, on conditions embodied in the order of the county court.

Saline county, as such, prior to the subscription of Marshall township, had made a county subscription of $400,000 to the same railroad. This last subscription had been attacked for illegality in the circuit court of Saline county, and such proceedings were had in the case as resulted in perpetually enjoining the issuing of said bonds. The grounds mainly relied on in opposition to the issuing of the bonds by Saline county was the unconstitutionality of the amendment of the charter of the company of March 24th, 1868.

The original charter of the Louisiana and Missouri River Railroad Company, granted in 1859, and the several amendments thereto prior to the amendment of March 24th, 1868, authorized the company to build a railroad from Louisiana, on the Mississippi river, to any point on the Missouri river, and authorized the counties along the line of the road to subscribe stock thereto without having the question of subscription submitted, as required by the constitution of 1865. By the amendment of March 24th, 1868, the railroad company sought to obtain the privilege of extending their road across the Missouri river, and, at the same time, to have the provision in regard to subscribing without submission granted to the counties along the line of the extension, on the south side of the Missouri river.

Acting on the supposition that these powers had been granted by the amendment, the company applied for and obtained the subscription of $400,000 of Saline county, the issuing of the bonds for which was enjoined.

While the proceedings to enjoin were pending, the people of Marshall township, under the act of March 23d, 1868, petitioned the county court of Saline county to submit to the voters of Marshall township the question of subscribing $150,000 in aid of extending the road across the Missouri river, on the condition of building it to Marshall, the county seat of Saline county, and within Marshall township, and the further condition of establishing a depot within half a mile of the town of Marshall. Under this submission a vote was had, resulting in a two-thirds majority in favor of the subscription, and the bonds in controversy were issued to pay the same.

The questions to be determined are: First, the constitutionality of the amendment of March 24th, 1868, by which the Louisiana and Missouri River Railroad was extended across and on the south side of the Missouri river; second, the granting of the power to subscribe by the counties on the extension without submission; third, the failing to recite in the title the subject embraced in the act; and, lastly, the negotiability of the bonds.

On the question of power by the legislature to extend the road across the Missouri river, and the question of the title of the act, the Missouri judges in the cases of State v. Saline Co. Ct., 51 Mo. 350, and State v. Callaway Co. Ct., Id. 395, were divided in opinion—the special judge called in deciding against the constitutionality of the amendment on both grounds; Judge Wagner, in a dissenting opinion, reaching an opposite conclusion, and the third judge offering no opinion. See case of Foster v. Callaway Co. [Case No. 4,967]. This court, in the Callaway Case cited, coincided with Judge Wagner, and this view was sustained by the supreme court of the United States on appeal. Upon the second question—the granting of the power to subscribe without submission to a vote on the extended line—all the Missouri judges agreed that the constitution of 1865 prohibited the legislature from granting such a power, and this court, in the case of Sherrard v. Lafayette Co. [Id. 12,771], followed that decision. The so-called township act of March 23d, 1868, under the decision of State v. Linn Co. Ct., 44 Mo. 504, and cases since, has been held constitutional by this court, and is now so held by the supreme court of the United States. County of Cass v. Johnston, 95 U. S. 360. The grant of power to extend the Louisiana and Missouri River Railroad across the Missouri river by the amendment of the charter of the company by the act of March 24th, 1868, having been held within legislative authority, we deem the bonds, so far as the questions are concerned, valid. The question of negotiability and consequent notice remains to be considered. The Marshall township bonds read as follows: "United States of America, State of Missouri. Saline County Bond. No. 3;

Class 'A'; nine years; $100; interest ten per centum per annum. Know all men by these presents, that, on the 1st day of January, A. D. 1880, the county of Saline, in the state of Missouri, promises to pay to the Louisiana and Missouri River Railroad Company, or bearer, the sum of one hundred dollars, at the Bank of America, in the city and state of New York, together with interest at the rate of ten per centum per annum, payable at the said Bank of America on the 1st day of January of each year, on the presentation and delivery of the annexed coupons of interest as they severally become due. This bond is issued in part payment of a subscription of one hundred and fifty thousand dollars made by Marshall township to the capital stock of the Louisiana and Missouri River Railroad Company, pursuant to an order of the county court of Saline county made on the 7th day of September, 1870, and is to be converted and exchanged for bonds of the county of Saline whenever the injunction now covering the subscription of four hundred thousand dollars made by the county court of said county on the 7th day of February, 1868, to said Louisiana and Missouri River Railroad Company shall be finally dissolved, and bonds issued under said order. In testimony whereof," etc.

Do the conditions and contingencies set out in the bond, that on the happening of the dissolution of the injunction (an event apparently anticipated) bonds of the county of Saline should be issued in lieu of those in suit, destroy their negotiability? The case of Vermilye v. Adams Express Co., 21 Wall. [88 U. S. 138], is relied on by both parties. The negotiability of certain treasury notes was in controversy. Upon the back of them the following statement was printed: "At maturity convertible at the option of the holder, into bonds redeemable at the pleasure of the government at any time after five years, and payable twenty years from June 15th, 1868, with interest at the rate of six per cent per annum, payable semi-annually, in coin." Justice Miller, delivering the opinion of the court, said: "They had the ordinary form of negotiable instruments, payable at a definite time. * * * The fact that the holder had an option to convert them into other bonds does not change their character. That this option was to be exercised by the holder, and not by the United States, is all that saves them from losing their character as negotiable paper; for if they had been absolutely payable in other bonds, or in bonds or money, at the option of the maker, they would not, according to all the authorities, be promissory notes, and they can lay claim to no other form of negotiable instrument."

What saved them, according to this authority, from losing their character as negotiable paper, was that the option to convert them into bonds remained to be exercised by the holder. In the case before us, the stipulation on the face of the bond is that they are to be converted and exchanged for bonds of the county of Saline. Converted and exchanged. Converted—that is, to be changed to something else; and then to be exchanged—that is, to be substituted for the converted bonds. This right and obligation to convert and exchange the maker of the bond stipulates for. In the conversion the county of Saline is to be made the payee. The maker stipulates for the conversion and exchange in this case—the very condition which, according to Justice Miller, destroys their negotiability. Judge Catron, in the case of U. S. v. Bank of U. S., 5 How. [46 U. S.] 397, says: "A bill of exchange is an instrument governed by the commercial law; it must carry on its face its authority to command the money drawn for. * * * But if no demand can be made on the bill standing alone, and it depends on other papers or documents to give it force and effect, and these must necessarily accompany the bill, it cannot be a simple bill of exchange, that circulates from hand to hand, or the representative of current cash." The bonds in controversy are encumbered with conditions and contingencies, and are therefore not negotiable, and if negotiated, are subject to the same defences they would have been subject to in the hands of the original owners. The conditions and contingencies set out on the face of the bond may be said to have been notice that the bonds sued on were not to be treated as negotiable paper, and ought to have made commercial men reluctant to touch them. Overton v. Tyler, 3 Pa. St. 346.

If, by reason of the conditions and contingencies, the bonds were not negotiable when they were issued, no subsequent circumstances could render them negotiable. Tindall's Ex'r v. Johnston, 1 Hayw. (N. C.) 372; Campbell v. Mumford, Id. 398; Thompson v. Gaylard, 2 Hayw. (N. C.) 150. These cases dispose of the argument that the conditions and stipulations in the bond having become impossible of performance, are to be disregarded and treated as of no effect.

The defences set up in the several counts of the answer to which the demurrer is filed are as follows: The ordinances of September 7th, 1870, referred to in the bonds, contained, among others, the condition "that said subscription shall be paid in bonds, to be issued in sums of not less than $100 nor more than $5,000, each of said bonds to bear interest at the rate of ten per cent per annum, the interest to be paid annually, on the 1st day of January of each year, at the Bank of America, in the city of New York, and to become due and payable as follows: Class 'A,' the sum of $40,000, to become due on the 1st day of January, 1880; class 'B,' the sum of $50,000, to become due on the 1st day of January, 1885; class 'C,' the sum of $60,000, to become due on the 1st day of January, 1890; and that said bonds should be

delivered to said railroad company, commencing with class 'A,' the sum of $20,000 when the said road shall be put under contract from the Missouri river to the town of Marshall, and work commenced in good faith; the remaining $20,000 when two miles of said road shall be graded within the limits of Saline county. Class 'B,' the sum of $25,000 when six miles of said road shall be graded within said limits of Saline county; and the further sum of $25,000 when ten miles of said road shall be graded within said county. And the sum of $30,000, class 'C,' when fifteen miles of said road shall be graded within the limits of said county; and the further sum of $30,000 of said class 'C' when the road-bed on all of the part of said road between the town of Marshall and the Missouri river shall be finished and ready for the iron."

The bonds being held non-negotiable, the facts set out in the second count of defendant's answer, going to the consideration of the bonds, on account of failure to comply with the conditions on which they were issued, are a proper defence, and the demurrer thereto must be overruled. Judgment accordingly.

[This case was originally published in 5 Dill. 270, as a note to Merriwether v. Saline Co., Case No. 9,485.]